UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

CHRISTOPHER A. DAVIS        ]
     Petitioner,             ]
                             ]
v.                           ]    No. 3:14-2278
                             ]    Judge Nixon
DEBRA K. JOHNSON, Warden     ]
     Respondent.             ]


**M E M O R A N D U M**

The petitioner, proceeding *pro se*, is an inmate at the Turney Center Industrial Prison in Only, Tennessee. He brings this action pursuant to 28 U.S.C. § 2254 against Debra Johnson, Warden of the facility, seeking a writ of habeas corpus.

### I. Background

On July 27, 2000, a jury in Davidson County found the petitioner guilty of first degree murder (2 counts), especially aggravated robbery (2 counts), and especially aggravated kidnapping (2 counts). Docket Entry No.12-2 at pgs.102-105. For these crimes, the petitioner received a death sentence for each murder conviction, along with an aggregate concurrent sentence of fifty years in prison for the remaining convictions. *Id.* at pgs.121,124-127.

On direct appeal, the Tennessee Court of Criminal Appeals

affirmed the convictions and sentences. Docket Entry No.12-36. The Tennessee Supreme Court later affirmed the convictions and sentences as well. Docket Entry No.12-42. The United States Supreme Court then denied petitioner's application for a writ of certiorari. Davis v. Tennessee, 543 U.S. 1156 (2005).

In August, 2005, the petitioner filed a *pro se* petition for state post-conviction relief in the Criminal Court of Davidson County. Docket Entry No.12-43 at pgs.3-20. Following the appointment of counsel, amendments to the petition, and a lengthy evidentiary hearing, the petition for post-conviction relief was denied in part and granted in part. The trial court refused to overturn the petitioner's convictions. However, the sentences of death were reversed and the court ordered a re-sentencing hearing. Docket Entry No.12-47 at pgs.3-127.

On appeal, the Tennessee Court of Criminal Appeals affirmed the ruling of the trial court. Docket Entry No.12-80. The Tennessee Supreme Court denied the petitioner's application for additional post-conviction review. Docket Entry No.12-82.

In December, 2013, the petitioner was re-sentenced to life imprisonment without the possibility of parole. Docket Entry No.1 at pg.1.

## II. Procedural History

On November 19, 2014, the petitioner initiated the instant action with the *pro se* filing of a petition for writ of habeas

2

corpus (Docket Entry No.1). The petition contains seven primary claims for relief with various sub-issues. These claims include :

1) the ineffective assistance of trial counsel[1]
   a) failure to investigate the state's witness, Antonio Cartwright, and seek his Juvenile Court records;
   b) failure to properly investigate the case;
   c) failure to "maintain continuous contact and establish a proper relationship" with the petitioner;
   d) failure to develop an adequate defense strategy;
   e) failure "to recognize potential prejudice and to object to the use of an anonymous jury";[2]
   f) failure "to object to the court's improperly excusing jurors on its own initiative";
   g) erroneous disclosure of witness interview memoranda to the prosecution;
   h) failure to exploit the inconsistent testimony of Antonio Cartwright; and
   i) failure to "recognize and exploit the petitioner's life-threatening anemia";

2) the prosecution wrongfully failed to disclose (Brady claims)
   a) the Juvenile Court records of Antonio Cartwright; and
   b) a videotaped interview of Yakou Murphy;

---

[1] Niles Nimmo, a member of the Davidson County Bar, was originally appointed as lead counsel with Hershell Koger, a member of the Giles County Bar, as second chair. However, prior to trial, Nimmo was allowed to withdraw and Koger became lead counsel with David Hornik, a former member of the Davidson County Bar, as second chair.

[2] The term "anonymous jury" means to refer to a juror by a number rather than by his or her name. Docket Entry No.12-47 at pg.113.

3

3) the petitioner was denied due process when the prosecution was allowed to present false testimony and inconsistent theories of the case in petitioner's trial as well as the trial of his co-defendant, Gdongalay Berry;

4) it was error to try the petitioner before an anonymous jury;

5) the petitioner was denied a fair and impartial jury when the court *sua sponte* excused potential jurors opposed to the death penalty;

6) an unresolved conflict of interest existed between the petitioner and counsel throughout the trial; and

7) a violation of the Confrontation Clause occurred when the Medical Examiner was allowed to testify about autopsies he did not perform.

Upon its receipt, the Court reviewed the petition and found that it contained at least one colorable claim for relief. For that reason, an order (Docket Entry No.3) was entered directing the respondent to file an answer, plead or otherwise respond to the petition. Rule 4, Rules --- § 2254 Cases.

Presently before the Court are the respondent's Answer (Docket Entry No.14), to which the petitioner has filed a Traverse (Docket Entry No.18).

Having carefully considered the petition, respondent's Answer, petitioner's Traverse and the expanded record, it does not appear that an evidentiary hearing is needed in this matter. See <u>Smith v. United States of America</u>, 348 F.3d 545, 550 (6th Cir. 2003)(an

evidentiary hearing is not required when the record conclusively shows that the petitioner is entitled to no relief). Therefore, the Court shall dispose of the petition as the law and justice require. Rule 8(a), Rules - - - § 2254 Cases.

### III. Analysis of the Claims

**A.) Procedurally Defaulted Claims**

A federal district court will not entertain a petition for writ of habeas corpus unless the petitioner has first exhausted all available state court remedies for each claim in his petition. 28 U.S.C. § 2254(b)(1).

While exhaustion is not a jurisdictional requirement, it is a strictly enforced doctrine which promotes comity between the states and federal government by giving the state an initial opportunity to pass upon and correct alleged violations of its prisoners' federal rights. O'Sullivan v. Boerckel, 526 U.S. 838, 845 (1999). Consequently, as a condition precedent to seeking federal habeas corpus relief, the petitioner is required to fairly present his federal claims to every available level of the state court system. Rose v. Lundy, 455 U.S. 509, 518-20 (1982); Lyons v. Stovall, 188 F.3d 327, 331 (6th Cir.1999). The petitioner must offer the state courts both the factual and legal bases for his claims. Hicks v. Straub, 377 F.3d 538, 552 (6th Cir.2004). In other words, the petitioner must present "the same claim under the same theory" to the state courts. *Id.* It is not enough that all the facts necessary

5

to support a federal claim were before the court or that the petitioner made a somewhat similar state law claim. Anderson v. Harless, 459 U.S. 4, 6 (1982).

Once petitioner's federal claims have been raised in the highest state court available, the exhaustion requirement is satisfied, even if that court refused to consider the claims. Manning v. Alexander, 912 F.2d 878, 883 (6th Cir. 1990).[3]

One of the ineffective assistance claims was never presented to the state appellate courts for consideration during either direct appeal, see Docket Entry No.12-33, or during post-conviction proceedings, see Docket Entry No.12-77. This claim was counsels' failure to "recognize and exploit the petitioner's life-threatening anemia" (Claim No.1i).

Unfortunately, at this late date, it appears that the petitioner is no longer able to raise this claim in the state courts. See Tenn. Code Ann. § 40-30-102(a) and (c). Therefore, by way of procedural default, the petitioner has technically met the exhaustion requirement with respect to this particular ineffective assistance claim. Alley v. Bell, 307 F.3d 380, 385 (6th Cir. 2002)(if an unexhausted claim would be procedurally barred under state law, that claim is procedurally defaulted for purposes of

---

[3] In Tennessee, a petitioner need only take his claims to the Tennessee Court of Criminal Appeals in order to fully exhaust his available state court remedies. Rule 39, Tenn. Sup. Ct. Rules; see also Adams v. Holland, 324 F.3d 838 (6th Cir. 2003).

federal habeas corpus review).

The exhaustion of a claim *via* procedural default does not, however, automatically entitle a habeas petitioner to federal review of that claim. To prevent a federal habeas petitioner from circumventing the exhaustion requirement in such a manner, the Supreme Court has held that a petitioner who fails to comply with state rules of procedure governing the timely presentation of a federal constitutional issue forfeits the right to federal review of that issue, absent cause for the noncompliance and some showing of actual prejudice resulting from the alleged constitutional violation. Gray v. Netherland, 518 U.S. 152, 162 (1996).

A habeas petitioner can not rely on conclusory assertions of cause and prejudice to overcome the adverse effects of a procedural default. Rather, he must present affirmative evidence or argument as to the precise cause and prejudice produced. Lundgren v. Mitchell, 440 F.3d 754, 764 (6th Cir.2006). To demonstrate cause, the petitioner must show that an objective factor external to the defense interfered with his ability to comply with the state procedural rule. Murray v. Carrier, 477 U.S. 478, 488 (1986). To establish prejudice, there must be a showing that the trial was infected with constitutional error. United States v. Frady, 456 U.S. 152, 170-72 (1982).

The petitioner's pleadings offer nothing to suggest cause for his failure to exhaust this ineffective assistance claim in the

state courts in a timely manner. Nor has there been a showing of prejudice arising from the alleged deficiency. As a consequence, this claim will not support an award of federal habeas corpus relief. Teague v. Lane, 489 U.S. 288, 297-98 (1989)(denial of a claim is appropriate when the federal claim was not raised in the state appellate courts for review).

Three of the petitioner's claims, i.e., it was error to try the petitioner before an anonymous jury (Claim No.4), the trial court erred by *sua sponte* excusing potential jurors opposed to the death penalty (Claim No.5), and there was a conflict of interest between the petitioner and his attorney (Claim No.6), were found to have been waived because they had not been properly raised on direct appeal. Docket Entry Nos.12-36 at pg.17 and 12-80 at pg.26.

When a state court rejects a habeas petitioner's claim pursuant to an independent and adequate procedural ground, that claim has been procedurally defaulted. Baze v. Parker, 371 F.3d 310, 320 (6th Cir.2004). Tennessee's waiver rule constitutes an adequate and independent state law rule precluding habeas corpus relief. Hutchinson v. Bell, 303 F.3d 720, 738 (6th Cir.2002). Therefore, federal habeas corpus review of these claims is barred absent a showing of cause and actual prejudice. Coleman v. Thompson, 501 U.S. 722, 750 (1991).

As noted above, the petitioner has shown neither cause nor prejudice sufficient to excuse the procedural default of these

claims. Thus, they will not provide the petitioner with a basis for federal habeas corpus relief.

**B.) Fully Exhausted Claims**

The petitioner's remaining claims, namely, the ineffective assistance of counsel (Claim Nos.1a-h), <u>Brady</u> claims (Claim Nos.2a-b), false testimony and inconsistent theories of the case (Claim No.3), and the Confrontation Clause issue (Claim No.7) were considered by the state courts on the merits and have been fully exhausted. Docket Entry No.12-36 (direct appeal); Docket Entry No.12-80 (post-conviction).

The availability of federal habeas corpus relief is limited with respect to claims that have been previously adjudicated on the merits in state court. <u>Harrington v. Richter</u>, 131 S.Ct. 770, 780 (2011). When a claim has been adjudicated on the merits in state court, the state court adjudication will not be disturbed unless it resulted in a decision contrary to clearly established federal law or involved an unreasonable application of federal law in light of the evidence. 28 U.S.C. § 2254(d); <u>Nevers v. Killinger</u>, 169 F.3d 352, 357 (6th Cir.1999).

In order for a state adjudication to run "contrary to" clearly established federal law, the state court must arrive at a conclusion opposite to that reached by the United States Supreme Court on a question of law or decide a case differently than the United States Supreme Court on a set of materially

indistinguishable facts. Lundgren v. Mitchell, *supra* at 762, *citing* Williams v. Taylor, 529 U.S. 362, 413 (2000). To grant the writ for an "unreasonable application" of federal law, the petitioner must show that the state court identified the correct governing legal principle involved but unreasonably applied that principle to the facts of the case. *Id.* In short, state court judgments must be upheld unless the Court finds that the state court's application of federal law was "objectively unreasonable", rather than simply incorrect. Goodell v. Williams, 643 F.3d 490, 495 (6th Cir.2011). A state court's application of federal law is objectively unreasonable if "there is no possibility fairminded jurists could disagree that the state court's decision conflicts with the Supreme Court's precedents. Harrington, *supra* at 131 S.Ct. 786.

## Brady Issues

The petitioner alleges that he was denied due process because the prosecution withheld the Juvenile Court records of a witness, Antonio Cartwright, and a videotaped statement given to the police by Yakou Murphy (Claim Nos.2a-b).

Due Process requires the prosecution to furnish a criminal defendant with any exculpatory evidence in its possession that is material to either his guilt or potential punishment, irrespective of the good faith or bad faith of the prosecutor. Brady v. Maryland, 373 U.S. 83, 87 (1963). Such evidence includes materials

10

that may be used for impeachment purposes. Giglio v. United States, 405 U.S. 150,154 (1972). Evidence is material when "there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." United States v. Bagley, 473 U.S. 667, 682 (1985).

The petitioner is alleging the non-disclosure of multiple pieces of evidence. These pieces of evidence would have in all likelihood had some value for impeachment purposes. When applying a Brady analysis, the suppressed evidence is to be considered collectively, not item by item. Kyles v. Whitley, 514 U.S. 419, 436 (1995).

None of this evidence altered the theory of the case or undermined the evidence presented about the robbery/murder scheme. Thus, the Tennessee Court of Criminal Appeals found that the undisclosed evidence was not material because its use could not be expected to reasonably undermine confidence in the verdict. Docket Entry No.12-80 at pgs.15-16. This Court agrees with that conclusion and finds that the petitioner's Brady claims have no merit.

### Ineffective Assistance of Trial Counsel

The petitioner asserts that counsel were ineffective in their preparation of the case (Claim Nos.1a-b,1d and 1g), their failure to maintain a good working relationship with him (Claim No.1c), their failure to insure that a fair jury was impaneled (Claim Nos.1e-f), and their inability to prevent the prosecution from

presenting false testimony and inconsistent theories of the case through the testimony of Antonio Cartwright (Claim Nos.1h and 3).

The Sixth Amendment provides that a criminal defendant is entitled to the effective assistance of counsel. McMann v. Richardson, 379 U.S. 759, 771 (1970). To establish a violation of this right, the petitioner bears the burden of pleading and proving that his attorney's performance was in some way deficient and that the defense was prejudiced as a result of the deficiency. Strickland v. Washington, 466 U.S. 668 (1984). Prejudice arises when there is a reasonable probability that, but for counsel's errors, the result of the proceeding would have been different. *Id.* at 466 U.S. 694. When considering such a claim, counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment. Mallett v. United States, 334 F.3d 491, 497 (6th Cir. 2003).

Antonio Cartwright, a juvenile, testified at the trial of Gdongalay Berry (petitioner's co-defendant) that he overheard Berry say that the victims would have to be killed, while he testified at the petitioner's trial that it was the petitioner who uttered those words. This inconsistency has led the petitioner to assert claims of ineffective assistance of counsel (Claim No.1h) and a due process violation (Claim No.3).

Both the ineffective assistance of counsel claim and the due

process claim require some showing of prejudice, i.e., that the inconsistency in testimony created a reasonable likelihood of a different trial result. Strickland, *supra* (ineffective assistance); *see also* Smith v. Groose, 205 F.3d 1045, 1049 (8th Cir.2000)(due process). In this instance, it does not matter whether it was petitioner or his co-defendant that uttered those words. The evidence shows that both agreed to rob the victims and kill them. Both carried out the plan without reservation. Thus, in the absence of any showing of prejudice arising from the inconsistent testimony of Antonio Cartwright, petitioner's ineffective assistance and due process claims have no merit.

The petitioner also asserts that his attorneys were ineffective in their preparation of the case for trial (Claim No.1b). More specifically, he claims that counsel failed to investigate and obtain the Juvenile Court records of Antonio Cartwright (Claim No.1a), that they neglected to formulate an adequate defense strategy (Claim No.1d), and that his attorneys improperly disclosed witness interview memoranda to the prosecution (Claim No.1g).

The defense team consisted of three attorneys, six investigators, a jury consultant and two expert witnesses. The attorneys were qualified under the applicable state supreme court standards to handle a death penalty case. Docket Entry No.12-53 at pg.24.

Evidence at the post-conviction evidentiary hearing shows that counsel filed various discovery motions, as well as motions to suppress, prior to trial. Docket Entry No.12-47 at pg.83. An investigative service, Inquisitor, billed for over $40,000 of investigative time for both the guilt and sentencing phases of the trial. *Id.* at pg.89. A mitigation specialist testified that "a lot of hours" went into the investigation and numerous witnesses were interviewed by investigators. Docket Entry No.12-52 at pgs.46-48. An investigator met and interviewed the petitioner's parents in California, while counsel met with his grandmother on several occasions. Docket Entry No.12-54 at pg.146 and 12-56 at pgs.88-89. Hershell Koger alone logged over 1400 hours on the case, Docket Entry No.12-54 at pg.143, while Daniel Hornik spent over 100 hours working on the case. Docket Entry No.12-56 at pg.86.

Defense counsel testified that, while the evidence against the petitioner was strong and their options were limited, they did formulate a defense strategy. This strategy included a combination of alibi, impaired capacity and reasonable doubt. Docket Entry No.12-53 at pg.57. It was agreed, however, that "... a lot of our defense strategy was absolutely torpedoed" by petitioner's testimony on the stand. Docket Entry No.12-56 at pg.67 and 12-53 at pg.80.[4]

---

[4] Petitioner refused to disclose the nature of his testimony to counsel prior to taking the witness stand. Docket Entry No.12-47 at pg.86.

14

With regard to the disclosure of witness interview memoranda to the prosecution, counsel thought they was complying with an agreement to exchange <u>Jencks</u> materials. Docket Entry No.12-47 at pg.85.

The state courts held that counsel had not been deficient in their preparation for trial. The record supports such a holding. In any event, though, the petitioner has made no showing of prejudice arising from the perceived errors in trial preparation. Therefore, petitioner's claims alleging ineffective assistance in the preparation for trial (Claim Nos.1a-b,d and g) are without merit.

The petitioner next alleges that he was denied the effective assistance of counsel because his attorneys failed to "maintain continuous contact and establish a proper relationship" with him (Claim No.1c).

Prior to withdrawing from the case, Niles Nimmo established a working relationship with the petitioner and became the primary contact for the defense team. Docket Entry No.12-47 at pgs.83 and 87. Upon his withdrawal, Herschell Koger assumed that role. But because he lived in Giles County rather than Davidson County, Koger was not always readily available to meet with the petitioner. Docket Entry No.12-53 at pg.43. In his stead, though, the petitioner often met with co-counsel (David Hornik), Docket Entry No.12-56 at pgs.88-89, and the investigators Docket Entry No.12-47 at pg.83 and 12-52 at pg.49. Moreover, the petitioner did not

15

testify at the evidentiary hearing. Thus, he offered no direct evidence from which one could infer that he had insufficient contact with his attorneys and the defense team.

The evidence shows that the petitioner was actively involved in almost every aspect of his defense. The state courts found no deficiency on the part of the attorneys with respect to establishing an adequate working relationship with the petitioner. Docket Entry No.12-80 at pg.21. Such a finding is not contrary to federal law. Consequently, this claim also lacks merit.

Petitioner's final ineffective assistance claims involve the selection of the jury. First, he alleges ineffective assistance because his attorneys failed to object to the use of an anonymous jury (Claim No.1e). Second, the petitioner believes that counsel should have objected to the trial court's excusing of veniremen on its own initiative (Claim No.1f).

The petitioner has offered nothing to show that the use of an anonymous jury was in any way erroneous or that he suffered any type of prejudice because of its use. Further, the trial court excused on its own initiative only those potential jurors who expressed an unwillingness to follow the applicable law. The defense team included a jury consultant and the petitioner played an active role in the selection of jurors. Docket Entry No.12-56 at pgs.93-94. Defense counsel were satisfied with jury selection. Docket Entry No.12-54 at pgs.198-201. The petitioner has not

identified any specific jurors who were either wrongly retained on the jury or excused from it. Thus, these issues have no merit.

### Confrontation Clause Issue

The medical examiners who performed autopsies on the victims were not available to testify at trial. The prosecution, therefore, was allowed to introduce the autopsy reports that they authored through the testimony of another medical examiner, Dr. Bruce Levy. The petitioner's final claim (Claim No.7) contends that the autopsy reports were improperly admitted because their admission denied him the right to confront his accuser in violation of the Constitution.[5]

The Confrontation Clause of the Sixth Amendment affords a criminal defendant the right to confront the witnesses against him. Thus, in Crawford v. Washington, 541 U.S. 36 (2004), the Supreme Court held that an out-of-court statement by a witness that is testimonial in nature is barred under the Confrontation Clause of the Constitution unless the witness is unavailable and the defendant has had a prior opportunity to cross examine him.

The state courts seem to have conceded the possibility that the autopsy reports were testimonial in nature and had been admitted in violation of petitioner's rights under the

---

[5] The petitioner unsuccessfully argued this issue as a state evidentiary claim on direct appeal. Docket Entry No.12-36 at pgs.17-18. The claim was revisited, however, on post-conviction in light of the Crawford decision.

Confrontation Clause. *See* Docket Entry No.12-80 at pg.19. Nevertheless, those courts found that the error, if any, was harmless. *Id.*

A Confrontation Clause violation is subject to harmless error analysis. McCarley v. Kelley, 759 F.3d 535, 547 (6th Cir.2014). To merit reversal on collateral review, a Confrontation Clause violation must have a "substantial and injurious effect or influence in determining the jury's verdict". Brecht v. Abrahamson, 507 U.S. 619, 637 (1993).

Petitioner's trial did not rest upon the question of whether the victims had been murdered or not. Rather, the question for the jury was whether the petitioner had been involved in the murders. The autopsy reports did very little to identify the petitioner as the killer. As a consequence, the admission of the autopsy reports was correctly found by the state courts to be a harmless error.

### IV. Conclusion

Four of the petitioner's claims (Claim Nos.1i,4-6) were not properly exhausted in the state courts and are, therefore, subject to dismissal. The petitioner's remaining claims (Claim Nos.1a-h, 2, 3 and 7) were fully exhausted in the state courts and were found to be without merit.

The record fully supports the findings of the state courts. The petitioner has failed to demonstrate in what way the legal analysis of the state courts ran contrary to or involved an

unreasonable application of federal law. Accordingly, having carefully reviewed the record, it appears that the petitioner's habeas corpus petition should be dismissed.

An appropriate order will be entered.

John T. Nixon
Senior District Judge